UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| SARAH E. SMITH | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL NO. 1:05cv393 |
| | ) | |
| VON MAUR, INC., | ) | |
| | ) | |
| Defendant. | ) | |

OPINION AND ORDER

This matter is before the court on a motion for summary judgment filed by the defendant, Von Maur, Inc. ("Von Maur"), on September 12, 2006. The plaintiff, Sarah E. Smith ("Smith"), filed her response on October 12, 2006, to which Von Maur replied on October 27, 2006. Smith then filed a sur-reply on November 1, 2006, to which Von Maur filed a sur-response on November 16, 2006.

For the following reasons, the motion for summary judgment will be granted.

Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim. Fitzpatrick v. Catholic Bishop of Chicago, 916 F.2d 1254, 1256 (7th Cir. 1990). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial."

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff."  Id.  In Re Matter of Wildman, 859 F.2d 553, 557 (7th Cir. 1988); Klein v. Ryan, 847 F.2d 368, 374 (7th Cir. 1988); Valentine v. Joliet Township High School District No. 204, 802 F.2d 981, 986 (7th Cir. 1986).  No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party."  Juarez v. Ameritech Mobile Communications, Inc., 957 F.2d 317, 322 (7th Cir. 1992)(quoting Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact, Celotex, 477 U.S. at 323.  The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment.  Goka v. Bobbitt, 862 F.2d 646, 649 (7th Cir. 1988); Guenin v. Sendra Corp., 700 F. Supp. 973, 974 (N.D. Ind. 1988); Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir.), cert. denied, 464 U.S. 960 (1983).

So that the district court may readily determine whether genuine issues of material fact exist, under Local Rule 56.1, the moving party is obligated to file with the court a "Statement of

Material Facts" supported by appropriate citation to the record to which the moving party contends no genuine issues exist.  In addition, the non-movant is obligated to file with the court a "Statement of Genuine Issues" supported by appropriate citation to the record outlining all material facts to which the non-movant contends exist that must be litigated.  See, Waldridge v. American Hoechst Corp. et al., 24 F.3d 918 (7th Cir. 1994).  In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. Anderson, 477 U.S. at 249-251, 106 S.Ct. at 2511.  Furthermore, in determining the motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the "Statement of Genuine Issues" filed in opposition to the motion.  L.R. 56.1

Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law.  Anderson, 477 U.S. at 248.  Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute.  Id.  The issue of fact must be genuine. Fed. R. Civ. P. 56(c), (e).  To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586; First National Bank of Cicero v. Lewco Securities Corp., 860 F.2d 1407, 1411 (7th Cir. 1988).  The non-moving party must come forward with specific facts showing that there is a genuine issue for trial.  Id.  A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a

3

matter of law." Anderson, 477 U.S. at 251-252.  Finally, the court notes that, "[i]t is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained" and in such cases summary judgment is appropriate.  Mason v. Continental Illinois Nat'l Bank, 704 F.2d 361, 367 (7th Cir. 1983).

## Discussion

Smith was an employee of Von Maur from November 3, 2003, until December 13, 2004.  Smith was hired as a Loss Prevention Associate and promoted to Loss Prevention Department Manager on August 29, 2004.  Smith had received positive reviews of her job performance during her employment with Von Maur.

On December 11, 2004, Smith detained two African-American female customers in the parking lot outside Von Maur and brought them back inside to the Loss Prevention Office based on her belief that they had taken merchandise without paying for it.  Smith learned from Kimberly Raney-Lewis, a sales associate, that Raney-Lewis had taken the merchandise from the customers while they were still in the dressing room, so Smith determined that this was an unproductive stop.

On December 13, 2004, Smith reported to work at Von Maur, and Amy Steigmeyer, her supervisor, and Sarah French, a human resources associate, met with Smith in the Loss Prevention Office.  Steigmeyer informed Smith that it was Von Maur's decision to terminate Smith's employment because Smith had violated Von Maur's policy by stopping the customers on December 11, 2004, without having a reason to watch them.  Steigmeyer gave Smith the option of resigning in lieu of termination, but Smith did not want to resign.

Prior to Smith's termination, Shaun Geise, a male loss prevention officer, was once

4

disciplined for a stop of two customers in the Von Maur parking lot, but he was not terminated because it was not considered an unproductive stop by Von Maur.  Geise was later terminated for a separate unproductive stop.  Smith participated in the unproductive stop that led to Geise's termination.  Smith received an informal disciplinary note for her participation in that stop.  It is Von Maur's policy that an employee may be terminated without prior documentation for misconduct.

Smith filed suit against Von Maur, claiming that Von Maur discriminated against her on the basis of her sex, in that she was treated differently than male employees and was terminated from her employment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq.

Title VII makes it unlawful for an employer to discriminate in the employment of any individual "because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 20002-2(a)(1). A plaintiff alleging sexual discrimination can contest summary judgment by using either the direct or indirect burden-shifting method outlined in McDonnell Douglas v. Green, 411 U.S. 792 (1973); King v. Preferred Technical Group, 166 F.3d 887, 891-92 (7th Cir. 1999).  Under the direct method, the plaintiff is required to produce enough direct or circumstantial evidence to create a triable issue of whether the adverse employment action had a discriminatory motive.  Wallace v. SMC Pneumatics, Inc., 103 F.3d 1394, 1397 (7th Cir. 1997). Direct evidence is essentially "an admission by the decision-maker that his actions were based on the prohibited animus."  Radue v. Kimberly Clark Corp., 219 F.3d612, 616 (7th Cir. 2000).  In the absence of direct evidence, circumstantial evidence must compose "a convincing mosaic of discrimination against the plaintiff," Troupe v. Mays Dep't Stores Co., 20 F.3d 734, 737 (7th Cir.

5

1994), that "points directly to a discriminatory reason for the employer's action." Adams v. Wal-Mart Stores, Inc., 324 F.3d 935, 939 (7th Cir. 2003).

Circumstantial evidence is generally of three types: (1) suspicious timing, ambiguous statements, or behavior toward other employees; (2) evidence that similarly situated employees were treated differently; or (3) evidence that the employee did not deserve termination and that the employer's reason for termination is a pretext for discrimination. Volvovsek v. Wis. Dep't of Agric., Trade and Consumer Prot., 344 F.3d 680, 689-90 (7th Cir. 2003). The third type is substantially similar to the indirect method except that the evidence must show that the decisionmaker acted because of the prohibited animus. Venturelli v. ARC Cmty.Servs., Inc., 350 F.3d 592, 601 (7th Cir. 2002).

Under the McDonnell Douglas burden-shifting analysis, Smith must first establish a prima facie case by showing that: (1) she is a member of a protected class; (2) she was meeting her employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) the employer treated similarly situated persons outside the protected class more favorably. Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 897 (7th Cir. 2003). If she meets this burden, Von Maur must provide a legitimate, nondiscriminatory reason for her termination. The burden then returns to Smith to present evidence that the reasons offered by Von Maur are actually a pretext for discrimination. McDonnell Douglas, 411 U.S. at 804.

Von Maur contends that Smith cannot point to any admission by Von Maur that its actions were based on the prohibited animus. Von Maur notes that Smith admitted in her deposition that she has no evidence that the reason Von Maur stated for her termination – the unproductive stop – was a lie. (Smith Dep. at 53). Thus, Von Maur correctly states that there is

6

no direct evidence of a discriminatory motive.

With respect to circumstantial evidence under the direct method, Smith points to her positive employment record to show that a trier of fact could find that her termination was a pretext for discrimination. Von Maur points out that the Seventh Circuit Court of Appeals recently addressed the issue of what constitutes a pretext. In Forrester v. Rauland-Borg Corp., 453 F.3d 416, 418 (7th Cir. 2006), the Court stated succinctly that a pretext is "a deliberate falsehood." The Seventh Circuit noted that "if the stated reason, even if actually present to the mind of the employer, wasn't what induced him to take the challenged employment action, it was a pretext." Id. at 419. But "[a]n honest mistake, however dumb, is not, and if there is no doubt that it is the real reason it blocks the case at the summary judgment stage." Id.

Von Maur argues that even if taken as true, Smith's evidence of her positive employment record as most suggests that perhaps Von Maur honestly got it wrong and should not have fired her. Von Maur asserts that this falls under the category of "an honest mistake" and fails to give rise to any inference that points directly to a discriminatory reason – Smith's gender – for the action taken against her. Adams, 324 F.3d at 939. Von Maur concludes that Smith's claim fails under the direct method.

With respect to the McDonnell Douglas framework, Von Maur acknowledges that Smith satisfies the first and third elements, since she is female and Von Maur terminated her employment. However, Von Maur argues that Smith cannot show that she was meeting Von Maur's legitimate job expectations at the time of the unproductive stop or that Von Maur treated similarly situated persons outside the protected class more favorably. Von Maur notes that Smith cites to her annual job performance review of November 2004, which shows that she fully

7

met or exceeded Von Maur's job performance expectations as evidence to satisfy the second prong. Von Maur argues, however, that the issue is not the employee's past performance, but whether the employee was performing well at the time of the adverse employment action. Peele v. Country Mut. Ins. Co., 288 F.3d 319, 329 (7th Cir. 2002). Von Maur argues that Smith's performance review is meager evidence of satisfactory performance, which is more than counter-balanced by the fact that at the time of her termination, Smith violated Von Maur's policies by engaging in an unproductive stop of two customers. Von Maur also informs the court that its Documentation Guidelines state, "In most instances, NO documentation is required prior to termination for the following reasons. . . Misconduct." (Appendix Ex. 1(a)). Further Von Maur's Loss Prevention Performance Expectations Checklist states under the heading "Quality of Work", "Do you . . . **Never make a bad stop?**" (Appendix Ex. 1(b))(emphasis in original). Thus Von Maur argues that it is clear that Smith violated a known company policy, and was not meeting legitimate expectations.

Von Maur next argues that Smith also fails to establish sufficient evidence of the fourth element, although she alleges that there are similarly situated male employees who were treated more favorably than she was – Shaun Geise and Anthony Canul. Von Maur notes that Geise was terminated because of an unproductive stop prior to Smith's termination. Von Maur argues that even if Geise or Canul were disciplined once for an unproductive stop prior to any termination, Smith has no evidence to establish that the circumstances surrounding the unproductive stops of Geise and Canul were similar to the circumstances surrounding her unproductive stop. Von Maur notes that Geise was, in fact, once disciplined for a stop of two customers in the Von Maur parking lot. However, he was not terminated because it was not an unproductive stop. An

8

unproductive stop occurs when a loss prevention associate approaches a customer and brings them back inside the store to the loss prevention office to ask them questions with the purpose of trying to get that customer to admit to taking something. (Steigmeyer Dep. at 27-28). Similarly, according to Von Maur, Anthony Canul was disciplined for making a stop outside the store rather than bringing the customers back into the store, but he was not terminated. Von Maur explains that the stop for which Smith was terminated was an unproductive stop based on the definition, which differentiates it from the stops for which Geise and Canul were warned but not terminated, because Smith brought the customers to the loss prevention office for questioning while Geise merely questioned the customers in the parking lot.

Von Maur further notes that Smith had been informally disciplined for participating in the stop that precipitated Geise's termination. Steigmeyer wrote a memo on August 5, 2004, which stated:

> Talked to Sarah today about the bad stop that occurred on August 1, 2004. Sarah said she only went outside with Shaun to back him in case anything went wrong, even though she did not see the entire situation transpire. Sarah said she only went with Shaun for safety reasons and because he was asking for her help and he was the DM. I told Sarah she will never get in trouble for not making a stop, if she is ever the least bit uncertain, she needs to back off. She said she totally understood and that it would never happen again.

Finally, Von Maur argues that even if the burden were to shift to Von Maur, it has provided a non-discriminatory reason for Smith's termination – the unproductive stop. It is then Smith's burden to present evidence that the reason offered by Von Maur is actually a pretext for discrimination. Von Maur reiterates that Smith has admitted that she has no evidence that the reason Von Maur stated for her termination was a lie. (Smith Dep. at 53). Thus, Von Maur

9

maintains that Smith's case fails as a matter of law and it is entitled to judgment in its favor.

Smith, however, claims that she has an abundance of circumstantial evidence that would allow a reasonable jury to infer that Von Maur intentionally discriminated against her because of her sex. Smith lists the circumstantial evidence as follows:

1. Two male loss prevention employees that worked at Von Maur, but were less experienced and had less loss prevention related education than Smith, were not terminated following their first unproductive stop. These employees were Shaun Geise, who was a loss prevention manager at the time of his first unproductive stop, and Anthony Canul, who was promoted to loss prevention manager shortly after Smith's termination.

2. Smith was terminated and then shortly thereafter replaced by a significantly less experienced male employee, Anthony Canul. At the time of Canul's promotion to loss prevention manager, he lacked the six years of loss prevention experience that Smith had, he had no law enforcement related degree which Smith had, and he had also already committed (on October 1, 2003) and received a formal written disciplinary warning for an unproductive stop.

3. Von Maur has no formal written policy that would put loss prevention employees on notice that (a) there was such a policy violation as an "unproductive stop", that (b) an "unproductive stop" is a violation of policy any different from bad or otherwise invalid stops of suspected shoplifters, (c) "unproductive" stops are in any way more serious policy violations than any other bad stop, or that (d) "unproductive" stops were termination offenses.

4. There are no material differences between Smith's first "unproductive" stop, and the first unproductive stops committed by loss prevention manager Geise and loss prevention employee Canul; the only difference is that in Smith's case, the suspects were interviewed in the loss prevention office, whereas the males talked to their suspects about missing merchandise while still outside of the store. Smith states that this is a distinction without a difference, since all three stops were equally unsuccessful, with no merchandise recovered from any suspects, and resulting in the suspects being let go after the stop.

5. Smith's performance, qualifications and experience at the time of the December 11, 2004 stop not only was equivalent to, but was superior to that of Geise or Canul at the time of their unproductive stops. Smith claims that, contrary to Von Maur's claim in its brief, she had never received any disciplinary action prior to December 11, 2004.

> 6. Von Maur's articulated reason for terminating Smith based on the loss prevention stop executed on December 11, 2004, has changed over time. In her termination form, the sole reason stated for termination was "violation of company rules" by committing an "unproductive stop on 12/11/04". However, in EEOC proceedings, Von Maur indicated that Smith was terminated because she allegedly racially profiled the customers, and failed to provide a reasonable explanation for making the stop. Smith claims that she did provide a reason for making the stop that was recognized under the policy manual - the customers had double-selected an item.

Smith also argues that she was meeting Von Maur's legitimate expectations at the time of her termination because she had favorable performance reviews. Smith further claims that Geise and Canul were similarly situated employees in all material respects. Thus, Smith concludes that she has set forth a prima facie case of discrimination.

Additionally, Smith contends that she can set forth sufficient evidence of pretext to create a genuine issue of material fact. Specifically, Smith claims that she has evidence of unequal discipline for the same or comparable act, has demonstrated that Von Maur had a lack of standards for termination and lack of definition of an "unproductive stop". In further support of pretext, Smith argues that Von Maur changed its articulated reason for termination and replaced her with a substantially less qualified employee.

Lastly, Smith argues that she is entitled to summary judgment on her retaliation claim because at the time of her termination she complained that Geise had committed an unproductive stop and was not fired, and she refused to resign. Thus, Smith contends that if she had not protested her treatment, by refusing to resign, she would not have been fired by Von Maur. The court first notes that Smith has not included a separate retaliation claim in her complaint, but notes further that her EEOC charge does include the phrase "retaliatory discharge". However, Smith has not filed a motion for summary judgment on her implied retaliation claim as required

by the local rules.  Moreover, Smith's assertion of retaliation ignores the facts of this case.  As Von Maur points out, Smith stated in her own deposition that when she went into the meeting with Amy Steigmeyer, "we sat down and Amy said it was Von Maur's decision to terminate my employment at that time." (Smith Dep. at 34).  Thus, the decision had been made to terminate Smith's employment with Von Maur regardless of whether Smith elected to resign in lieu of termination.  This court agrees with Von Maur that there is no evidence of retaliation.

In reply to Smith's assertion that she has a prima facie case of discrimination, Von Maur reiterates its argument that Smith was not meeting legitimate expectations at the time of her termination because she had made an unproductive stop.  Clearly, Von Maur is correct.  While it is undisputed that Smith had received favorable evaluations from Von Maur, and thus had been meeting legitimate expectations up to the time of the unproductive stop, Smith ceased meeting expectations when she made the unproductive stop.  It is clear that Von Maur's policy was that no unproductive stops were to occur.

Von Maur also contests Smith's assertion that she had never received any discipline prior to the unproductive stop.  Von Maur points out that in August 2004, Smith received informal discipline in the form of a note in her personnel file for her participation in the unproductive stop for which Geise was terminated.  Von Maur concedes that the note was not a "formal disciplinary action", but asserts that the note is evidence that Smith was verbally warned about what is and is not an appropriate stop.

Von Maur next explains why Smith was terminated for her unproductive stop (in which she brought the customers to the loss prevention office in the store), when employees who stop customers in the parking lot and question them (but do not take them back to the store) are not

12

necessarily terminated.  According to Von Maur, an unproductive stop occurs when a loss prevention associate approaches a customer and brings them back inside the store to the loss prevention office to ask them questions with the purpose of trying to get that customer to admit taking something.  Von Maur states that there is a real difference between (1) asking a customer in a parking lot if they have seen an item of merchandise, and (2) escorting a customer to the loss prevention office, shutting the door behind them, and interrogating them.  The difference is that the customer is made to feel as if they are not free to leave when shut inside an office with a loss prevention team member.  This opens Von Maur up to liability for false imprisonment if there was not probable cause to stop the customer.  Von Maur acknowledges that questioning a customer in a parking lot is discouraged without first following the necessary procedures to know if the customer has taken merchandise without paying for it, but it does not rise to the level of confining the customer.  Von Maur states that it is a more serious situation for the customer, the loss prevention team member, and Von Maur if it occurs within the confines of the loss prevention office.   Thus, Von Maur takes the situation more seriously in disciplining its employees when an unproductive stop occurs.  Von Maur contends that Smith cannot show that there has ever been an occurrence where a loss prevention team member was not terminated for taking a customer to the loss prevention office when the customer had done nothing wrong.

  Von Maur again argues that Smith has no evidence to establish that the circumstances surrounding the unproductive stops of Geise and Canul were similar to the circumstances surrounding her unproductive stop.  Geise was once disciplined for a stop of two customers in the Von Maur parking lot.  However, he was not terminated because it was not an unproductive stop.  Similarly, Anthony Canul was disciplined for making a stop outside the store rather than

13

bringing the customers back into the store, but he was not terminated.  The stop for which Smith was terminated was an unproductive stop, which differentiates it from the stops for which Geise and Canul were warned but not terminated because Smith brought the customers to the loss prevention office for questioning, escalating the situation when it was determined that the customers had not stolen anything.  Clearly, Von Maur is correct in its assertion that Smith's circumstances were not the same as the circumstances with respect to Geise and Canul.  Thus, Geise and CAnul are not similarly situated employees.

Von Maur states that the most similarly situated male employee for purposes of this case is Eric Ford.  Ford began working for Von Maur as a loss prevention associate on August 6, 2002.  Both his 45-day and 90-day performance reviews show that he was meeting or exceeding expectations in all categories.  On August 15, 2003, Ford detained in the loss prevention office two customers he suspected of taking jeans.  When it was discovered that Ford had miscalculated the number of jeans that were selected by the customers, the customers were told that they were free to go.  The next day, Ford was given the choice to resign or be terminated after his manager discussed the situation with Amy Rotert, the regional director.  Ford chose to resign.

Just like in Ford's case, Smith had been an employee of Von Maur for approximately a year with performance reviews showing that she was meeting or exceeding expectations in all categories.  Then Smith made an unproductive stop by taking two customers into the loss prevention office without first following the proper procedures.  Additionally, Smith had the opportunity to resign in lieu of termination, but Smith chose not to resign.  Amy Rotert, the regional director for the stores that Smith and Ford worked in, was the decision-maker when it came to both of their terminations.   Thus, Von Maur maintains that it has enforced this policy

uniformly without regard to gender, and Smith cannot prove otherwise.

Smith, in her sur-reply objects to the use of Eric Ford as a similarly situated male. Smith points out that Ford was not an employee at the store she worked at, but at a store in Charlstowne, Illinois. Unlike Smith, Ford was not under the direct supervision of Amy Steigmeyer. Smith claims that the decision makers in her termination were not all the same as for Ford, because Steigmeyer was not a participant in the decision to end Ford's employment. Smith claims that the case law requires that there be a showing that an allegedly similarly situated employee had the same supervisor as the plaintiff. Smith relies on Franklin v. City of Evanston, 384 F.3d 838, 847 (7th Cir. 2004), to support her assertion. However, as Von Maur correctly notes, Franklin merely notes that whether two employees share the same supervisor is one factor, among many, that a court may consider in determining whether employees are similarly situated. The Seventh Circuit law is that a similarly situated employee for purposes of proving discrimination refers to "employees who were 'directly comparable to [the plaintiff] in all material respects'". Brummett v. Sinclair Broad. Group, Inc., 414 F.3d 686 (7th Cir. 2005); Patterson v. Avery Dennison Corp., 281 F.3d 676, 680 (7th Cir. 2002). In some cases, having the same direct supervisor would clearly be an important factor to consider in whether employees were similarly situated. In the present case, however, Von Maur has stores in several states, rendering the direct supervisor a less important factor. The important factors in this case are Von Maur's company-wide policy with respect to unproductive stops, and the ultimate decision-maker with respect to the employees' terminations. Von Maur has shown that it enforced its unproductive stop policy uniformly, even in different states, and that the same person, Amy Rotert, was the decision-maker in both Ford and Smith's terminations. This court finds that Ford

15

is similarly situated to Smith, even though he worked in a different Von Maur store and had a different direct supervisor. Likewise, as discussed above, Geise and Canul are not similarly situated to Smith because they did not commit unproductive stops, as defined by Von Maur.

Smith also takes issue in her sur-reply with what she views as Von Maur's "changing theories" for her termination. Smith states that her termination form identified the reason as an unproductive stop in violation of policy. At the EEOC stage, Smith claims that Von Maur stated the reason for her termination as its concern that she racially profiled customers. And in its summary judgment brief, Von Maur stated that the aspect of the unproductive stop that caused Smith's termination was the fact that the questioning of the suspected shoplifters occurred in the Loss Prevention Office, and in its reply brief Von Maur again mentioned its concern that Smith was racially profiling customers. Smith contends that Von Maur's "changing theories" is evidence of pretext.

In its response to Smith's sur-reply, Von Maur denies it has had changing theories of her termination. Von Maur notes that it was asked by the EEOC for further explanation of Smith's termination, and it then stated that it saw no reasonable objective factors that led Smith to watch the two women she eventually detained, which caused Von Maur to be concerned that Smith had engaged in racial profiling to make an unproductive stop against company policy. Likewise, Von Maur's explanation of the difference between her unproductive stop and the bad stops made by male employees was in response to Smith's insistence that the stops were essentially the same. As Von Maur maintains, the underlying reason for Smith's termination, the unproductive stop, has never changed.

Smith also argues that her replacement by a less qualified male is evidence of pretext.

16

Anthony Canul was chosen to replace Smith as loss prevention manager.  Prior to working with Von Maur, Canul had one year of loss prevention experience with Osco.  And prior to his promotion as loss prevention manager (after Smith's termination), Canul had worked at Von Maur as a loss prevention associate for approximately one year.  In contrast, Smith had been employed by Von Maur for only nine months when she was promoted to loss prevention manager.  Von Maur states that Canul was promoted to loss prevention manager because he was the most qualified person to fill the vacant position at the time.   The court fails to see how Canul's promotion is evidence of pretext, even if he was less qualified than Smith.  Smith has not shown that there were other women more qualified than Canul who were not promoted or that Canul was not qualified for the position.  Thus, Canul's promotion is not evidence of sex discrimination and is not evidence of pretext.

Smith has failed to present any direct evidence of discrimination, a "convincing mosaic" of circumstantial evidence, or a prima facie case under the McDonnell Douglas analysis.  With respect to the latter, Smith has not shown that she was meeting Von Maur's legitimate expectations at the time of her termination.  Nor has Smith shown that similarly situated males were treated more favorably.  Finally, even if Smith had presented a prima facie case, she has failed to present evidence of pretext.  Accordingly, for all of these reasons, Von Maur's motion for summary judgment will be granted.

## Conclusion

Based on the foregoing, Von Maur's motion for summary judgment is hereby granted.

Entered: December 7, 2006.

                                              s/ William C. Lee
                                              William C. Lee, Judge
                                              United States District Court